# EXHIBIT A

# EXHIBIT A

1  JEFFREY L. HOGUE (SBN 234557)
   TYLER J. BELONG (SBN 234543)
2  ERIK A. DOS SANTOS (SBN 309998)
   **HOGUE & BELONG**
3  170 Laurel Street
   San Diego, CA 92101
4  Tel.: (619) 238-4720
   Fax: (619) 238-5260
5
   Attorneys for Plaintiff
6

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**11/29/2017** at 03:21:14 PM

Clerk of the Superior Court
By Bruce Follis, Deputy Clerk

7          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8            **FOR THE COUNTY OF SAN DIEGO—CENTRAL**

9   BRYANT FONSECA, an individual, on       CASE NO.:   37-2017-00045630-CU-WT-CTL
    behalf of himself and all others similarly
10  situated, and on behalf of the general public,   **CLASS ACTION COMPLAINT FOR**
                                                     **DAMAGES**
11              Plaintiff,
                                                     1)  **DISPARATE TREATMENT –**
12      vs.                                              **CALIFORNIA**
                                                         **GOVERNMENT CODE §**
13                                                       **12940(a)**
    HEWLETT-PACKARD COMPANY, a              2)  **DISPARATE IMPACT –**
14  Delaware Corporation; HP ENTERPRISE         **CALIFORNIA**
    SERVICES, LLC, a Delaware Limited           **GOVERNMENT CODE §§**
15  Liability Company; HP, Inc., a Delaware      **12940(A), 12941;**
    corporation; and DOES 1-100, inclusive.  3)  **WRONGFUL TERMINATION**
16                                               **IN VIOLATION OF PUBLIC**
                Defendants.                      **POLICY;**
17                                           4)  **FAILURE TO PREVENT**
                                                 **DISCIMINATION;**
18                                           5)  **VIOLATION OF THE**
                                                 **CARTWRIGHT ACT –**
19                                               **CALIFORNIA BUSINESS**
                                                 **AND PROFESSIONS CODE §§**
20                                               **16270,** *et seq.*
                                             6)  **VIOLATION OF**
21                                               **CALIFORNIA BUSINESS**
                                                 **AND PROFESSIONS Code §§**
22                                               **16600** *et seq.*
                                             7)  **UNFAIR COMPETITION –**
23                                               **CALIFORNIA BUSINESS &**
                                                 **PROFESSIONS CODE §§**
24                                               **17200,** *et seq.*
25
                                             **DEMAND FOR JURY TRIAL**
26
27
28

Bryant Fonseca ("Fonseca" or "Plaintiff"), individually and on behalf of all others similarly situated, allege the following:

## INTRODUCTION

1.      This class action is brought by Plaintiff, on behalf of himself, and on behalf of all others similarly situated, and on behalf of the general public against Hewlett-Packard Company, a Delaware corporation and its successors, HP Enterprise Services, LLC, a Delaware Limited Liability Company, and HP Inc., a Delaware corporation (collectively, "HP").  Plaintiff alleges on information and belief, except for information on personal knowledge, as follows.

2.      Plaintiff petitions this Court to allow him to represent and prosecute claims against HP in class action proceedings on behalf of all those similarly situated who are residing in the State of California.

## THE PARTIES

3.      At all material times, Mr. Fonseca was a resident of the County of San Diego in the State of California.  At all material times, Mr. Fonseca was the employee of HP within the meaning of California Government Code section 12940.

4.      At all material times, HP conducted business within the County of San Diego. HP's headquarters and principal place of business are located in the city of Palo Alto, California.  Palo Alto is the location where HP directs, controls, and coordinates its business operations.

5.      The true names and capacities, whether individual, corporate, partnership, associate or otherwise of defendants DOES 1 through 100, inclusive, are unknown to Plaintiff who therefore sues these defendants by such fictitious names under California Code of Civil Procedure section 474.  Plaintiff will either seek leave to amend this Class Action Complaint or file a DOE statement to allege the true names and capacities of DOES 1 through 100, inclusive, when the same are ascertained.  The DOE defendants together with HP are collectively referred to herein as "Defendants."

6.      Plaintiff is informed and believes, and thereon alleges, that Defendants are each responsible in some manner for one or more of the events and happenings that proximately caused the injuries and damages hereinafter alleged.

7.      Plaintiff is informed and believes, and thereon alleges, that Defendants knowingly and willfully acted in concert, conspired together and agreed among themselves to enter into a combination and systemized campaign of activity to cause the injuries and damages hereinafter alleged, and to otherwise consciously and or recklessly act in derogation of the rights of Plaintiff, the Age Discrimination Class (defined below), and the Antitrust Class (defined below).  Defendants further violated the trust reposed by Plaintiff, the Age Discrimination Class, and the Antitrust Class by their negligent and or intentional actions.  Said conspiracy, and Defendants' concerted actions, were such that, on information and belief, and to all appearances, Defendants represented a unified body so that the actions of one defendant was accomplished in concert with, and with knowledge, ratification, authorization and approval of each and every other defendant.

8.      Plaintiff is informed and believes and thereon alleges, that each and every defendant named in this Class Action Complaint, including DOES 1 through 100, inclusive, is, and at all times mentioned herein was, the agent, servant, alter ego, and or employee of each of the other defendants and that each defendant was acting within the course of scope of his, her or its authority as the agent, servant and or employee of each of the other defendants.  Consequently, each and every defendant is jointly and severally liable to Plaintiff, the Age Discrimination Class, and the Antitrust Class for the damages sustained as a proximate result of their conduct.

9.      At all times herein mentioned, the Defendants, and each of them, were members of, and engaged in, a joint venture, partnership and common enterprise, and acted within the course and scope of said agency, employment, and enterprise.  Defendants operate as a single enterprise to transact their business through unified operation and common control.  At all times herein mentioned, the acts and omissions of various Defendants, and each of them, concurrently contributed to the various acts and omissions of each and every one of the other Defendants in

proximately causing the wrongful conduct, harm, and damages alleged here

10.     At all times herein mentioned, Defendants, and each of them, approved, condoned and/or otherwise ratified each and every one of the acts or omissions complained of herein.  At all times herein mentioned, the Defendants, and each of them, aided and abetted the acts and omissions of each and every one of the other Defendants, thereby proximately causing the damages as herein alleged.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to the California Constitution, Article VI, section 10, which grants the Superior Court, "Original Jurisdiction in all causes except those given by statute to other courts."  The causes of action alleged herein are not reserved for any court other than the Superior Court of California. Additionally, the statutes under which this action is brought do not specify any other basis for jurisdiction.

12.     This Court has jurisdiction over each of the defendants because upon information and belief, each defendant is either a citizen of California, has sufficient minimum contacts in California, or otherwise intentionally avails itself of the California market so as to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice.

13.     Venue as to HP is proper in this judicial district under California Code of Civil Procedure sections 395(a) and 395.5 as a portion of the acts complained of herein occurred in the County of San Diego.  The injuries to Plaintiff occurred in the County of San Diego.  HP either owns, maintains offices, transacts business, has an agent or agents within the County of San Diego, or otherwise is found within the County of San Diego.  Further, Plaintiff was employed by HP in the County of San Diego.

## ADMINISTRATIVE PREREQUISITES

14.     On November 3, 2017, Mr. Fonseca filed a charge against HP with the Department of Fair Employment and Housing ("DFEH") concerning HP's policy that targeted

**CLASS ACTION COMPLAINT FOR DAMAGES**

himself and other employees aged 40 years and older through a pattern and practice of unlawful terminations.  The DFEH issued Mr. Fonseca an immediate right-to-sue letter. (*See* Exhibit A.)

## **FACTUAL ALLEGATIONS**

**Bryant Fonseca was a Talented and Experienced Employee that had Loyally Served HP for More Than 35 Years.**

15.     Mr. Fonseca is currently 55 years old.

16.     Mr. Fonseca was employed by HP for nearly 36 years.  He worked out of HP's San Diego site, located in Rancho Bernardo.

17.     Mr. Fonseca first worked for HP as a part of a summer program while he was in high school in 1978.  For most of his career, Mr. Fonseca worked in the "CHIL" work group, where his title was "Procurement Ops Associate V."  The CHIL group conducted research and development related to HP's all-in-one printers.  Mr. Fonseca would work with vendors in order to obtain all supplies that the group required.

18.     Over time, Mr. Fonseca's responsibilities began to increase dramatically.  Mr. Fonseca became an expert at using the SAP program – a business software program that makes a business's purchasing department run more efficiently.  Mr. Fonseca later became classified as a "SAP Super User."

19.     In approximately August 2016, the CHIL work group was dissolved, and Mr. Fonseca began to work in an engineering support group.

**HP's Employees Were Older, More Experienced, and Therefore More Expensive Than the Employees at HP's Competitors.**

20.     In 2012, the median age of HP's workforce was 39 years old, the oldest in the tech industry.  With one-half of its workforce over the age of 39, HP's labor costs were higher than other tech companies.  HP employees with 10-19 years of experience are paid an average of just over $97,000 annually while employees with 20 or more years of experience are paid an average of just over $110,000 annually.  By contrast, HP employees with less than 1 year of

experience are paid an average of just over $64,000 while employees with 1-4 years of experience are paid an average of just over $65,000.

**HP's Workforce Reduction Plan Sought to Replace Older, Experienced Employees with Younger, Cheaper Ones.**

21.    On or about early 2012, HP implemented its "2012 U.S. Workforce Reduction Plan" ("Workforce Reduction Plan"), which was a scheme to terminate its older, higher paid employees and replace them with younger, lower paid employees.  HP's Workforce Reduction Plan involuntarily terminates employees on a rolling basis.  Although HP's Workforce Reduction Plan purports to lay off employees on a neutral basis, it actually is a companywide practice that disproportionately targets employees who are 40 years of age or older – a protected class – for termination.

22.    HP has stated that its purpose in instituting the Workforce Reduction Plan was to realign its "organization to further stabilize the business and create more financial capacity to invest in innovation, but it's not enough.  If [HP is] to position [itself] as the industry leader for the future, then [HP] must take additional actions that, while tough, are necessary to move [its] business forward.  These actions include a reduction in [HP's] global workforce."
On October 9, 2013, HP's then-CEO Meg Whitman described HP's staffing objectives at the company's "Hewlett-Packard Securities Analyst Meeting".  **Whitman explained that HP was aggressively seeking to *replace* older employees with younger employees**.  On this topic, some of Whitman's comments include, but are not limited to:

- ". . . a question that is actually completely relevant for all large-cap IT companies, which is how do you keep up with this next generation of IT and how do you bring people into this company for whom it isn't something they have to learn, it is what they know."

- ". . . we need to return to a labor pyramid that really looks like a triangle where you have a lot of early career people who bring a lot of knowledge who you're training to move up through your organization, and then people fall out either from a performance perspective or whatever."

- "And over the years, our labor pyramid . . . [has] become a bit more of a diamond.  And we are working very hard to recalibrate and reshape our labor pyramid so that it looks like the more classical pyramid that you

should have in any company and particularly in ES.  If you don't have a whole host of young people who are learning how to do delivery or learning how to do these kinds of things, you will be in real challenges."

- "So, this has a couple of things.  One is we get the new style of IT strength and skills.  It also helps us from a cost perspective . . . if your labor pyramid isn't the right shape, you're carrying a lot of extra cost.  The truth is we're still carrying a fair amount of extra costs across this company because the overall labor pyramid doesn't look the way it should."

- "Now, that's not something that changes like that.  Changing the shape of your labor pyramid takes a couple of years, but we are on it, and we're amping up our early career hiring, our college hiring.  And we put in place an informal rule to some extent which is, listen, when you are replacing someone, really think about the new style of IT skills."

23.    HP's CFO Cathie Lesjak ("Lesjak") explained the scheme as a way to proactively shift the makeup of HP's workforce towards low-level recent graduates:

"And the way I think about the restructuring charge . . ., it's basically catching up.  It's actually dealing with the sins of the past in which we have not been maniacally focused on getting the attrition out and then just agreeing to replace anyway and not thinking through it carefully and thinking through what types of folks we hire as replacements . . . We hire at a higher level than what we really need to do.  And the smarter thing to do would be to prime the pipeline, bring in fresh new grads, and kind of promote from within as opposed to hiring a really experienced person that is going to be much more expensive."

24.    HP's Manager of Employee Relations for the Americas, Sheri Bowman, explained that it was critical for some HP organizations to reduce expenses, and one way they had done so was by changing the composition of their workforce:

The focus within the different organizations has evolved a lot over the past four or five years because of the turnaround that we have been trying to achieve within the organization.  And so there is a tremendous focus on increasing revenue, increasing client satisfaction to help increase revenue and reducing, you know, overall expenses.  So that has just resulted in some organizations modifying their workforce to try to get to the right labor pyramid to achieve their business goals.

**HP Executed the Workforce Reduction Plan That Targeted Older Employees.**

25.     In November 2015, HP was still persistently eliminating the jobs of older, age-protected employees, like Mr. Fonseca, and replacing them with younger employees.  Ms. Whitman confirmed as much in her public statements intended to reach the ears of HP investors:

> "That should be it.  I mean, that will allow us to right size our enterprise services business to get the right onshore/offshore mix, to make sure that we have a labor pyramid with lots of young people coming in right out of college and graduate school and early in their careers. That's an important part of the future of the company . . . This will take another couple of years and then we should be done."

26.     Consistent with HP's strategy to eliminate the older members of its workforce in favor of younger workers, when selecting which employee to terminate under its Workforce Reduction Plan, HP's goal is to single out those workers who it thinks "will not fit the bill long term in [the] team growing to [an advisory] position."

27.     Although purportedly neutral on their face, HP's terminations under its Workforce Reduction Plan are actually targeted to eliminate older, age-protected workers in grossly disproportionate numbers.  As of October 2015, a total of 1,765 out of 2,076 California-based employees who were terminated under HP's Workforce Reduction Plan (or over 85%) are 40 years of age, or older.

28.     HP's Workforce Reduction Plan is implemented on a rolling basis.  That is, it does not terminate HP's employees all at once.  But, it serves as a mechanism for HP to terminate members of a protected class of employees whenever it wants.  Plaintiff is informed and believes that HP is *still* engaged in the systematic elimination of its age protected class of employees.

29.     Also, HP implements its Workforce Reduction Plan to carefully avoid triggering a Workforce Adjustment and Retraining Notification ("WARN") event.  A WARN Act event is triggered when a covered establishment terminates 50 employees in the same geographic region at any one time.  If a WARN Act event is triggered, the company must provide terminated employees

CLASS ACTION COMPLAINT FOR DAMAGES

with at least 60 days' notice of his or her termination, and pay them for 60 days' worth of pay. HP actively evades these requirements by not terminating 50 or more employees at any one time in the same geographic area.

**HP's "Fake" Measures that Purportedly Helped Terminated Employees to Retain Employment in a Different Capacity were Illusory.**

30. Theoretically, HP employees terminated under the Workforce Reduction Plan are encouraged to apply for other jobs at HP through HP's 60-day "Preferential Rehire Period." A termination is cancelled for any HP employee who is hired during this "Preferential Rehire Period." While the Preferential Rehire Period is supposed to be neutral in its application, it is not applied neutrally because it adversely impacts disproportionate numbers of age protected employees. In fact, during the Preferential Rehire Period, HP's older employees are almost never rehired. If an older employees are even offered a job, the job is rarely, if at all, comparable to the one that employee held before he or she was terminated.

31. From the time that the Workforce Reduction Plan was implemented in 2012 until approximately 2014, a terminated employee that was not rehired during the "Preferential Rehire Period" became ineligible for 12 months following termination – according to HP's written policy. Beginning in August 2014, employees terminated under the workforce reduction plan were made completely ineligible for rehire despite continuing to be told that they could take advantage of the Preferential Rehire Period. Simply put, the Preferential Rehire Period is a façade that masks the systematic terminations of Defendants' older employees by making it appear as though HP was interested in retaining these individuals.

32. Since August 2013, HP's Human Resources has incorporated written guidelines that require HP to hire mostly younger employees. Specifically, those guidelines state: "New corporate requisition policy requires 75% of all External hire requisitions be 'Graduate' or 'Early Career' employees." Thus, age-protected employees who were terminated under the Workforce Reduction Plan and who sought rehiring under the Preferential Rehiring Period, were fighting an uphill battle

against HP's inherent prerogative to hire a disproportionate percentage of younger "early career" and "recent graduates".[1]

33.     Thus, available job postings included discriminatory language that made clear that HP was looking for a "younger" employee to fill those available jobs.  Accordingly, age-protected employees were rejected for rehiring under the Preferential Rehire Period provision of the Workforce Reduction Plan in disparately greater numbers than their younger peers who applied either externally or pursuant to the Preferential Rehire Period provision.

34.     HP also implemented an early retirement program in which employees of a certain age and tenure are eligible to "voluntarily" retire early.  If the employee does not choose voluntary early retirement he or she may soon be unemployed.  This retirement program presents age-protected employees with a Hobson's choice: either participate in the voluntary retirement program or risk being terminated under the Workforce Reduction Plan.  The aforementioned dilemma works to HP's advantage.

35.     The Workforce Reduction Plan also deters the recipient from looking for jobs from third party employers.  Specifically, the Workforce Reduction Plan requires the employee to notify his or her manager "immediately" upon acceptance of employment with a "competitor" of HP, and the Workforce Reduction Plan further states: "If you accept a position with a competitor during the WFR Redeployment Period, you will terminate your Plan participation at that point you will not be eligible for the Cash Severance Pay."

**HP Has Deliberately Avoided Confronting the Reality that Its Policies Disproportionately Impact Age Protected Employees.**

36.     Older employees were well aware of the fact that many of their age-protected peers had been selected for termination under the Workforce Reduction Plan.  In the engineering support group, older employees would advise each other not to disclose their age or how long they had

---

[1] Notably, the Equal Employment Opportunity Commission views the use of "new grad" and "recent grad" in job notices to be illegal because it discourages older applicants from applying.

CLASS ACTION COMPLAINT FOR DAMAGES

worked at HP in order to avoid being selected for termination under the Workforce Reduction Program.

37.    HP has an "Adverse Impact Team" that evaluates various HP employment practices to determine whether or not those practices impact a significant number or percentage of a particular protected class of employees.  Although HP has an "Adverse Impact Team," for unknown reasons, it does not investigate the facts related to whether or not the Workforce Reduction Plan adversely affects a class of *age* protected employees disproportionately.

38.    According to its "HP 2016 Sustainability Report," HP provides workforce data regarding its diversity in the United States, but tellingly provides no facts about its age-protected workforce data.

39.    On or about February 2017, HP set forth a "diversity mandate" when it hires outside attorneys to defend it from lawsuits.  If a law firm does not fit HP's selective "diversity" requirements then it can withhold ten percent (10%) of the firm's attorneys' fees.  Tellingly, "age" is not one of the criteria or factors included in this "diversity mandate."  This omission further evidences HP's devaluation of age-protected class of persons.

40.    Consequently, since July 2012 there have been approximately *forty* age discrimination charges filed against HP with the Department of Fair Employment & Housing ("DFEH") and California Superior Court.

41.    According to a January – February 2017 article published by AARP, HP has received more allegations of age discrimination than *any* other technology company in recent years.

**Mr. Fonseca was Terminated under the Workforce Reduction Plan, and Was Not Rehired During Either the Redeployment Period or the Preferential Rehire Period Because He Was Replaced by Somebody Younger and Cheaper.**

42.    On May 8, 2017, Mr. Fonseca was notified by his manager that his employment was being terminated pursuant to the Workforce Reduction Plan, and that his termination date would be May 19, 2017.  In a letter, Mr. Fonseca was informed that "your position has been

CLASS ACTION COMPLAINT FOR DAMAGES

eliminated." He was never given any further details regarding why he had been selected for termination under the Workforce Reduction Plan.

43.    Mr. Fonseca was informed that he would have two weeks as part of his "redeployment period" to find another job with HP. If he was able to successfully find another position during that time, then he would be allowed to continue to work without interruption. If he was not able to find another position at HP within the redeployment period, then he would be terminated and the 60-day "Preferential Rehire Period" would commence. During that time, Mr. Fonseca would be allowed to apply for jobs within HP, and if he was selected then he would be re-hired without having to undertake the approval process normally required for a rehire.

44.    At the time that Mr. Fonseca was terminated, he was the oldest person in his work group. He had previously worked with other individuals that were older than him, however, they had already been terminated pursuant to the Workforce Reduction Plan.

45.    Mr. Fonseca received excellent performance reviews. In his most recent performance review, his manager stated that he was one of the employees who "consistently achieve[s] their goals and demonstrate[s] HP's Leader Attributes and Behaviors in achieving these goals. [His] contributions have a positive impact to the team, organization, and HP." That review praised a number of Mr. Fonseca's achievements, including work that he did with other labs and sites beyond what was required of his position. After listing the many contributions to HP that Mr. Fonseca had made during the period, his manager summarized, "That is an impressive list of accomplishments. Bryant, you've really stepped up with your additional responsibilities and done a great job."

46.    Mr. Fonseca also received numerous performance related awards within his department.

47.    After his termination, Mr. Fonseca sought to be rehired by HP. Mr. Fonseca applied to two different positions within the company, both of which he was incredibly qualified. One position was located in Corvallis, Oregon. He did not receive any response whatsoever with regard to that position. The other position was in Vancouver, Washington. He

visited Vancouver in order to interview for this job.  Ultimately, high-level management denied him this position without giving any explanation.  As a result, Mr. Fonseca was not rehired by HP.

48.    As part of his benefits package under the Workforce Reduction Plan, HP paid for Mr. Fonseca to receive a four-month career transition program from Lee, Hecht, Henderson - a firm focusing career counseling.  Mr. Fonseca participated in this program, however, he found it to be largely ineffective because the career counselor was largely unavailable, and her advice was more or less, "Applying for jobs is worthless," and getting a job is all about "Who you know."

49.    HP subsequently hired a new employee who was younger and less expensive than Mr. Fonseca to perform the tasks that he previously did.  Despite submitting multiple job applications every day since his termination, Mr. Fonseca has yet to find gainful employment.

50.    As a result of his unlawful termination, Mr. Fonseca has had to resort to government assisted welfare and food stamps in order to support his family and their three foster children.[2]  Mr. Fonseca's foster children have lost their medical care providers as well because his family was kicked off HP's health insurance plan.

**HP Conspired With 3D Systems, Inc. to Stop 3D Systems from Recruiting their Employees.**

51.    HP also engaged in a "no poach" secret arrangement with 3D Systems, Inc., a California corporation ("3D Systems").  3D Systems competes with HP to build various printer products, including 3D printers.

52.    Technology employees, such as the employees who work for 3D Systems, are frequently in high demand due to their specialized technology skills and ability.

53.    Throughout its existence, 3D Systems has hired many HP employees away from HP, including multiple high-level managers.  While Mr. Fonseca worked for the CHIL group,

---

[2] Mr. Fonseca has fostered approximately 35 children over the course of his life and has been the recipient of the Foster Parent of the Year award.

CLASS ACTION COMPLAINT FOR DAMAGES

he saw a large number of other CHIL employees leave HP to work at 3D Systems. Furthermore, in approximately August 2016, soon after the CHIL group had been dissolved, the managers of that group held a meeting with all of that group's employees. At that meeting, employees were told that they were required to notify HP if they were offered a position with 3D Systems.

54.     Any employee that was offered a position with 3D Systems would not be allowed to receive the severance check that he or she would otherwise be entitled to under the Workforce Reduction Plan's release agreement, according to the individuals conducting the meeting. As a result, outgoing employees stopped seeking employment with 3D Systems after this meeting.

55.     Upon Plaintiff's information and belief, HP conspired and combined with 3D Systems in order to stop 3D Systems from attempting to hire outgoing HP employees. Also upon Plaintiff's information and belief, 3D Systems subsequently ceased contact with outgoing HP employees regarding potential employment.

56.     The intended and actual effect of this "no poach" conspiracy was that it restricted recruitment, fixed and suppressed employee compensation, and imposed unlawful restrictions on employee mobility.

57.     HP's conspiracy and agreements restrained trade and the overarching conspiracy is *per se* unlawful under California law. Plaintiff and the Antitrust Class seek injunctive relief and damages for violations of the Cartwright Act (Cal. Bus. and Code §§ 16720, et seq.) and California Business and Professions Code sections 16600 and 17200, *et seq.*

58.     In a lawfully competitive labor market, HP would have needed to consider the risk that a particular competitor would hire one of its employees when deciding whether to terminate that employee. The risk that an employee might begin working for a competitor also would have been prominent for HP in deciding how much it was willing to pay in order to retain that employee. Because of HP's agreement with 3D Systems, some of HP's employees became artificially disposable as their value to competitors was instantly eliminated. This allowed HP to terminate employees that it would not otherwise terminate because they did not

have to worry about whether the competitive labor market would drive their former employee to a competitor. HP and each of its co-participants would also have competed against each other for employees and would have hired employees according to the needs of their business and the going market rates for employee wages. And, in such a lawfully competitive labor market, the participants of the secret "no poach" agreements would have engaged in such employee hiring in direct competition with one another, resulting in employees accepting offers from the company who makes the most favorable offer of employment.

59.     Additionally, in a lawfully competitive labor market, an outgoing employee would have the ability to apply to all possible employers and then accept a position with the employer that offered him or her the highest salary. Employers would be incentivized to offer higher salaries to more valuable prospective employees in order to ensure that they were not outbid. Because of the agreement in this case (1) outgoing employees were restricted from seeking employment with 3D Systems, and were denied any salary offer that they might have made and (2) HP and other potential employers were not pressured to outbid 3D Systems for outgoing employees' services, thus paid below-market rates for their employees' services.

60.     The competitive marketplace helps to ensure that companies can benefit by taking advantage of rivals' efforts expended soliciting, interviewing, and training skilled employees – provided they pay salaries sufficient to lure employees away from competitors. The competitive marketplace also benefits the public by fostering the flow of new non-proprietary information, skills, and technologies across competing industry leaders. And, for obvious reasons, this competitive process benefits our country's work force by compensating employees for the fair market value of their skills, knowledge, and experience.

61.     For these reasons, competitive hiring serves as a critical role, particularly in the high technology industry where companies benefit from obtaining employees with advanced skills and abilities. By restricting hiring, employee salaries at competing companies are restricted and depressed, decreasing the pressure of an employee's current employer to match a rival's offer and vice versa. Restrictions on hiring also limit an employee's leverage when negotiating his or her salary with his or her current employer. Furthermore, when companies

CLASS ACTION COMPLAINT FOR DAMAGES

restrict hiring of rival companies' employees the wages of those employees are suppressed because companies are not bidding against each other. As a result, the effects of hiring restrictions impact all employees of participating companies.

62.     Plaintiff and each member of the Antitrust Class was harmed by this secretive no poach arrangement. The elimination of competition and suppression of compensation and mobility had a negative cumulative effect on all Class members.

## CLASS ALLEGATIONS

63.     This class action is properly brought under the provisions of California Code of Civil Procedure section 382, and, to the extent applicable, the procedural provisions of Rule 23 of the Federal Rules of Civil Procedure, which have been adopted by the California Supreme Court for use by the trial courts of this State. Plaintiff brings this class action on behalf of himself and all others similarly situated, with Plaintiff proceeding as the representative member of the following classes defined as:

> All current, former, or prospective employees who worked for HP in the State of California between April 22, 2012, and present who were at least 40 years old at the time HP selected them for termination under HP's Workforce Reduction Plan. ("Age Discrimination Class").

> All natural persons employed by HP in California at any time from November 28, 2013 to the present. ("Antitrust Class").

64.     To the extent equitable tolling applies to toll claims by the above-referenced Class' against Defendants, the class period should be adjusted accordingly.

65.     This action has been brought and may properly be maintained as a class action, under California Code of Civil Procedure section 382 because a well-defined community of interest in the litigation exists and because the proposed class is easily ascertainable, and for the other reasons explained in this Class Action Complaint.

66.     <u>Numerosity:</u>  The persons who comprise Age Discrimination Class and the Antitrust Class (collectively, the "Plaintiff Classes") are so numerous that joinder of all such persons would be unfeasible and impracticable. The membership of Plaintiff Classes is

unknown to Plaintiff at this time; however, the Age Discrimination Class alone is at least one thousand seven hundred individuals, whose identities are readily ascertainable by inspection of HP's payroll records.

67.  <u>Commonality:</u>  Common questions of fact or law arising from HP's conduct exist, as described in this Complaint, as to all members of Plaintiff Classes, which predominate over any questions solely affecting individual members of the proposed class, including but not limited to:

- Whether HP's policies or practices relating to the Workforce Reduction Plan were based on discriminatory intent towards employees over 40 who were otherwise qualified for those positions;

- Whether HP's Workforce Reduction Plan had a disproportionate adverse impact on its California employees aged 40 or older;

- Whether HP's policy of selecting employees to terminate under its Workforce Reduction Plan had a disproportionate adverse effect on those California employees aged 40 or older;

- Whether HP's termination selection policy (i.e., the Workforce Reduction Plan) was a substantial factor in causing the Class member terminations (i.e., harm);

- Whether HP failed to adequately investigate, respond to, and/or appropriately resolve instances of age discrimination in the workplace;

- Whether HP failed to implement policies and practices to prevent discrimination against older employees.

- Whether HP's Workforce Reduction Plan was an unfair, unlawful, deceptive, and or fraudulent business practice;

- Whether an alternative or modification to the Workforce Reduction Plan existed that would have had less of an adverse impact on employees aged 40 years and older;

- Whether HP's anti-competitive conspiracies, associated agreements, and practices violated the Cartwright Act;

- Whether HP's anti-competitive conspiracies, associated agreements, and practices restrained trade, commerce, or competition violated Business and Professions Code section 16600, *et seq.*;

- Whether HP's anti-competitive conspiracies, associated agreements, and practices constituted unlawful or unfair business acts or practices in violation of California Business and Professions Code section 17220; and

CLASS ACTION COMPLAINT FOR DAMAGES

- Whether HP's anti-competitive conspiracies, associated agreements, and practices caused antitrust injury;

68.    HP's defenses, to the extent that any such defense is applied, are applicable generally to Plaintiff Classes and are not distinguishable to any degree relevant or necessary to defeat predominance in this case.

69.    Typicality:  Plaintiff's claims are typical of the claims for the members of the Age Discrimination Class and Antitrust Class as a whole, all of whom have sustained and/or will sustain injuries, including irreparable harm, as a legal (proximate) result of HP's common course of conduct as complained of in this operative complaint.  Plaintiff's class claims are typical of the claims of the Age Discrimination Class and Antitrust Class because HP used its policies and practices (i.e., its Workforce Reduction Plan, accompanying Preferential Rehire Period, and anti-competitive practices) to subject Plaintiff and each member of the Age Discrimination Class and Antitrust Class to identical unfair, unlawful, deceptive, and/or fraudulent business practices, acts, and/or omissions.

70.    Adequacy:  Plaintiff, on behalf of all others similarly situated, will fairly and adequately protect the interests of all members of the Age Discrimination Class and Antitrust Class in connection with which they have retained competent attorneys.  Plaintiff is able to fairly and adequately protect the interests of all members of the aforementioned Classes because it is in Plaintiff's best interests to prosecute the claims alleged herein to obtain full compensation due to them.  Plaintiff does not have a conflict with either the Age Discrimination Class nor the Antitrust Class, and his interests are not antagonistic to either of those Classes. Plaintiff has retained counsel who are competent and experienced in representing employees in complex class action litigation

71.    Superiority:  Under the facts and circumstances set forth above, class action proceedings are superior to any other methods available for both fair and efficient adjudication of the controversy.  A class action is particularly superior because the rights of each member of the Age Discrimination Class or Antitrust Class, inasmuch as joinder of individual members of either Class is not practical and, if the same were practical, said members of the Age

-18-

Discrimination Class or the Antitrust Class could not individually afford the litigation, such that individual litigation would be inappropriately burdensome, not only to said citizens, but also to the courts of the State of California.

72.     Litigation of these claims in one forum is efficient as it involves a single decision or set of decisions that affects the rights of thousands of employees.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgment concerning HP's practices.

73.     To process individual cases would increase both the expenses and the delay not only to members of the Age Discrimination Class, but also to HP and the Court.  In contrast, a class action of this matter will avoid case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of each member of the Age Discrimination Class and Antitrust Class, all by way of the comprehensive and efficient supervision of the litigation by a single court.

74.     This case is eminently manageable as a class.  Defendants' computerized records, including meticulous payroll and personnel data, provide an accurate and efficient means to obtain information on the effect and administration of the Workforce Reduction Plan *en masse*, including class-wide damages, meaning class treatment would significantly reduce the discovery costs to all parties.

75.     In particular, since HP is obfuscating the import of its Workforce Reduction Plan, misleading its employees, suppressing their wages and mobility, the Age Discrimination Class and Antitrust Class are neither sophisticated nor legally knowledgeable enough be able to obtain effective and economic legal redress unless the action is maintained as a class action. Given the unlikelihood that many injured class members will discover, let alone endeavor to vindicate, their claims, class action is a superior method of resolving those claims.

76.     There is a community of interest in obtaining appropriate legal and equitable relief for the common law and statutory violations and other improprieties, and in obtaining adequate compensation for the damages and injuries which HP's actions have inflicted upon

CLASS ACTION COMPLAINT FOR DAMAGES

Plaintiff and the Age Discrimination Class or the Antitrust Class.

77.     There is also a community of interest in ensuring that the combined assets and available insurance of HP are sufficient to adequately compensate the members of the Age Discrimination Class or Antitrust Class for the injuries sustained.

78.     Notice of the pendency and any result or resolution of the litigation can be provided to members of the Age Discrimination Class or the Antitrust Class by the usual forms of publication, sending out to members a notice at their current addresses, establishing a website where members can choose to opt-out, or such other methods of notice as deemed appropriate by the Court.

79.     Without class certification, the prosecution of separate actions by individual members of the Plaintiff Classes would create a risk of: (1) inconsistent or varying adjudications with respect to individual members of Age Discrimination Class and Antitrust Class that would establish incompatible standards of conduct for HP; or (2) adjudications with respect to the individual members of Age Discrimination Class and Antitrust Class that would, as a practical matter, be disparities of the interests of the other members not parties to the adjudication, or would substantially impair or impede their ability to protect their interest.

## **FIRST CAUSE OF ACTION**

**Age Discrimination: Disparate Treatment – Cal. Govt. Code § 12900** *et seq.*

**(Plaintiff Bryant Fonseca, on Behalf of Himself and the Age Discrimination Class Against Defendants)**

80.     Mr. Fonseca, on behalf of himself and the Age Discrimination Class, re-alleges and incorporates by reference, as though fully set forth herein, all of the preceding paragraphs.

81.     Under the Fair Employment & Housing Act ("FEHA"), it is unlawful for an employer to use its employee's age as a basis to terminate or lay off, refuse to hire, re-hire, or re-instate, or discriminate in compensation or in terms, conditions, or privileges of employment. (Cal. Govt. Code § 12940(a).)

82.     The FEHA protects employees over the age of 40. (Cal. Govt. Code §§ 12926(b), 12941(a).)  Mr. Fonseca was an employee of HP over the age of 40—when HP fired Mr. Fonseca,

he was 55 years old.  Thus, because Mr. Fonseca was an employee over the age of 40 at the time of his firing, he is in a class of persons protected by the FEHA.  Likewise, all members of the Age Discrimination Class were aged 40 or over at the time of their termination pursuant to the Workforce Reduction Plan and are thus protected by the FEHA.

83.     The FEHA covers "employers" who are "regularly employing five or more persons." (Cal. Gov't Code § 12926(d).)  HP employs more than five persons and is therefore an employer under the FEHA.

84.     As referenced above, Mr. Fonseca filed timely charges with the DFEH against Hewlett-Packard Company, HP Enterprise Services, LLC, and HP Inc. and received an immediate right to sue notice.  Mr. Fonseca served the charge and right-to-sue letter upon Hewlett-Packard Company, HP Enterprise Services, LLC, and HP Inc.

85.     Defendants' terminating or laying off Mr. Fonseca and the members of the Age Discrimination Class because of their age constitutes willful, knowing, intentional, and unlawful discrimination in violation of the FEHA.

86.     Defendants' not re-hiring, re-instating, or hiring Mr. Fonseca and the members of the Age Discrimination Class, especially in comparable positions, because of their age constitutes willful, knowing, intentional, and unlawful discrimination in violation of the FEHA.

87.     Defendants denying Mr. Fonseca and the members of the Age Discrimination Class the benefits of their employment with Defendants because of their age constitutes willful, knowing, intentional, and unlawful discrimination in violation of the FEHA.

88.     Mr. Fonseca is informed and believes, and based thereon alleges, that his and the members of the Age Discrimination Class's years of age was the substantial motivating factor in Defendants' decision to terminate Plaintiff and the members of the Age Discrimination Class.

89.     In addition to the conduct described above, Defendants have failed to prevent, respond to, adequately investigate, and/or appropriately resolve instances of age discrimination in the workplace.

90.     As a direct and proximate result of Defendants' willful, knowing, and intentional discrimination against Mr. Fonseca and the members of the Age Discrimination Class, Mr. Fonseca

CLASS ACTION COMPLAINT FOR DAMAGES

and the members of the Age Discrimination Class have suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress.  Mr. Fonseca and the members of the Age Discrimination Class are therefore entitled to general and compensatory damages in an amount to be proven at trial.

91.     As a direct and proximate result of Defendants' willful, knowing, and intentional discrimination against Mr. Fonseca and the members of the Age Discrimination Class, Mr. Fonseca and the members of the Age Discrimination Class have incurred and will continue to incur a loss of earnings and other employment benefits and job opportunities.  Mr. Fonseca and the members of the Age Discrimination Class are therefore entitled to general and compensatory damages in amounts to be proven at trial.

92.     Mr. Fonseca is informed and believes, and based thereon alleges, that Defendants' outrageous conduct directed at Mr. Fonseca and the members of the Age Discrimination Class described above, was done with malice, fraud, or oppression and with conscious and/or reckless disregard for the rights of Mr. Fonseca and the members of the Age Discrimination Class, and with the intent, design, and purpose of injuring them.  Defendants, through their officers, managing agents, and or their supervisors, authorized, condoned, and or ratified the unlawful of all of the other defendants.  Thus, Mr. Fonseca and the members of the Age Discrimination Class are entitled to exemplary or punitive damages from Defendants in amounts to be determined according to proof at trial.

93.     As a further direct and proximate result of Defendants' actions, Mr. Fonseca and the members of the Age Discrimination Class are entitled to and seek their attorney fees and costs. (*See* Cal. Govt. Code § 12965(b).)

94.     Mr. Fonseca and the members of the Age Discrimination Class also seek the "affirmative relief" or "prospective relief" afforded them under California Government Code section 12926(a).

CLASS ACTION COMPLAINT FOR DAMAGES

**SECOND CAUSE OF ACTION**

**Age Discrimination: Disparate Impact – Cal. Govt. Code §§ 12940(a), 12941**

**(Plaintiff Bryant Fonseca, on Behalf of Himself and the Age Discrimination Class Against Defendants)**

95.     Mr. Fonseca, on behalf of himself and the Age Discrimination Class, re-alleges and incorporates by reference, as though fully set forth herein, all of the preceding paragraphs.

96.     The FEHA protects employees over the age of 40. (Cal. Govt. Code §§ 12926(b), 12941(a).)  Mr. Fonseca was an employee of HP over the age of 40—when HP fired Mr. Fonseca, he was 55 years old.  Thus, because Mr. Fonseca was an employee over the age of 40 at the time of his firing, he is in a class of persons protected by the FEHA.  Likewise, all members of the Age Discrimination Class were aged 40 or over at the time of their termination pursuant to the Workforce Reduction Plan and are thus protected by the FEHA.

97.     When Mr. Fonseca and the members of the Age Discrimination Class applied for other positions within HP and HP refused to select them for comparable positions within HP, Mr. Fonseca and the members of the Age Discrimination Class were aged 40 or over and were therefore in a class of persons the FEHA protects.

98.     The FEHA covers "employers" who are "regularly employing five or more persons." (Cal. Govt. Code § 12926(d).)  HP employs more than five persons and is therefore an employer under the FEHA.

99.     As part of its reduction in workforce, HP implemented its Workforce Reduction Plan.

100.     HP's Workforce Reduction Plan disproportionately selected for termination HP's employees aged at least 40 years.  Further, HP's Workforce Reduction Plan disproportionately terminated the employment of HP's employees aged at least 40 years.  For example, among all those terminated under the Workforce Reduction Plan, over 85% were at least 40 years old.  In other words, out of a total of 2,076 employees laid off under the Workforce Reduction Plan, 1,765 were 40 years old or older.  HP's Workforce Reduction Plan adversely affected Mr. Fonseca and the members of the Age Discrimination Class through HP selecting and terminating them.  Mr. Fonseca and the members of the Age Discrimination Class were also adversely affected by

Defendants not re-hiring, re-instating, or hiring Mr. Fonseca and the members of the Age Discrimination Class, especially in comparable positions.

101.    HP's implementation of the Workforce Reduction Plan was a substantial factor in directly and proximately causing harm to Mr. Fonseca and the members of the Age Discrimination Class.

102.    In addition to the conduct described above, Defendants have failed to prevent, respond to, adequately investigate, and/or appropriately resolve instances of age discrimination in the workplace.

103.    As a substantial direct and proximate result of HP implementing the Workforce Reduction Plan to terminate Mr. Fonseca and the members of the Age Discrimination Class, Mr. Fonseca and the members of the Age Discrimination Class have suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress. Mr. Fonseca and the members of the Age Discrimination Class are therefore entitled to general and compensatory damages in an amount to be proven at trial.

104.    As a substantial direct and proximate result of HP implementing the Workforce Reduction Plan against Mr. Fonseca and the members of the Age Discrimination Class, Mr. Fonseca and the members of the Age Discrimination Class have incurred and will continue to incur a loss of earnings and other employment benefits and job opportunities.  Mr. Fonseca and the members of the Age Discrimination Class are therefore entitled to general and compensatory damages in amounts to be proven at trial.

105.    Mr. Fonseca is informed and believes, and based thereon alleges, that Defendants' outrageous conduct directed at Mr. Fonseca and the members of the Age Discrimination Class described above, was done with malice, fraud, or oppression and with conscious and/or reckless disregard for the rights of Mr. Fonseca and the members of the Age Discrimination Class, and with the intent, design, and purpose of injuring them.  Defendants, through their officers, managing agents, and or their supervisors, authorized, condoned, and or ratified the unlawful of all of the other defendants.  Thus, Mr. Fonseca and the members of the Age Discrimination Class are entitled to exemplary or punitive damages from Defendants in amounts to be determined according to proof

at trial.

106.    As a further direct and proximate result of Defendants' actions, Mr. Fonseca and the members of the Age Discrimination Class are entitled to and seek their attorneys' fees and costs. (*See* Cal. Govt. Code § 12965(b).)

107.    Mr. Fonseca and the members of the Age Discrimination Class also seek the "affirmative relief" or "prospective relief" afforded them under California Government Code section 12926(a).

### THIRD CAUSE OF ACTION

#### Wrongful Termination in Violation of Public Policy

#### (Plaintiff Bryant Fonseca, on Behalf of Himself and the Age Discrimination Class Against Defendants)

108.    Mr. Fonseca, on behalf of himself and the Age Discrimination Class, re-alleges and incorporates by reference, as though fully set forth herein, all of the preceding paragraphs.

109.    It is the public policy of the State of California, as expressed in the FEHA (Cal. Gov't Code § 12940, *et seq.*) and Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq.*) that employers shall not subject employees to age discrimination and terminate employees because of age.  This public policy of the State of California is one that benefits the public at large and guarantees the rights of employees to perform their work free from discrimination.  Further public policy support for the wrongful termination claims of Mr. Fonseca and the members of the Age Discrimination Class is also found in California Labor Code sections 6300, 6400, and the California Constitution Article I, section 8.

110.    As a direct and proximate result of Defendants' willful, knowing, and intentional discriminatory termination against Mr. Fonseca and the members of the Age Discrimination Class, Mr. Fonseca and the members of the Age Discrimination Class have suffered and will continue to suffer pain and suffering and extreme and severe mental anguish and emotional distress.  Mr. Fonseca and the members of the Age Discrimination Class are thereby entitled to general and compensatory damages in amounts to be proven at trial.

111.    As a direct and proximate result of Defendants' willful, knowing, and intentional

discriminatory termination against Mr. Fonseca and the members of the Age Discrimination Class, Mr. Fonseca and the members of the Age Discrimination Class have incurred and will continue to incur a loss of earnings and other employment benefits and job opportunities. Mr. Fonseca and the members of the Age Discrimination Class are thereby entitled to general and compensatory damages in amounts to be proven at trial.

112. Mr. Fonseca is informed and believes, and based thereon alleges, that Defendants directed the outrageous conduct directed at Mr. Fonseca and the members of the Age Discrimination Class, as described above, with malice, fraud, and or oppression and with conscious disregard for the rights of Mr. Fonseca and the members of the Age Discrimination Class and with the intent, design, and purpose of injuring them. Defendants, through their officers, managing agents and or their supervisors, authorized, condoned and or ratified the unlawful conduct of all of the other defendants. Thus, Mr. Fonseca and the members of the Age Discrimination Class are entitled to punitive or exemplary damages in a sum according to proof at trial.

113. Plaintiff is entitled to an award of attorneys' fees and costs in prosecuting this action against Defendants under California Code of Civil Procedure section 1021.5 and other applicable law. A successful outcome in this action will confer on the general public and a large class of persons (the Age Discrimination Class) both a pecuniary and nonpecuniary benefit and will result in the enforcement of important rights affecting the public interest. The necessity and financial burden of private enforcement furthermore make such an award appropriate.

## FOURTH CAUSE OF ACTION

### Failure to Prevent Discrimination – Cal. Govt. Code §§ 12900, *et seq.*

**(Plaintiff Bryant Fonseca on Behalf of Himself and the Age Discrimination Class Against Defendants)**

114. Mr. Fonseca, on behalf of himself and the Age Discrimination Class, re-alleges and incorporates by reference, as though fully set forth herein, all of the preceding paragraphs.

115. The FEHA protects employees over the age of 40. (Cal. Gov't Code §§ 12926(b), 12941(a).) Mr. Fonseca was an employee of HP over the age of 40—when HP fired Mr. Fonseca, he was 55 years old. Thus, because Mr. Fonseca was an employee over the age of 40 at the time of

1    his firing, he is in a class of persons protected by the FEHA.  Likewise, all members of the Age

2    Discrimination Class were aged 40 or over at the time of their termination pursuant to the

3    Workforce Reduction Plan and are thus protected by the FEHA.

4        116.    The FEHA covers "employers" who are "regularly employing five or more persons."

5    (Cal. Govt. Code § 12926(d).)  HP employs more than five persons and is therefore an employer

6    under the FEHA.

7        117.    HP subjected Mr. Fonseca and the members of the Age Discrimination Class to

8    discrimination when HP selected Mr. Fonseca and the members of the Age Discrimination Class for

9    termination under HP's Workforce Reduction Plan.  In addition, HP subjected Mr. Fonseca and the

10    members of the Age Discrimination Class to discrimination when HP terminated Mr. Fonseca and

11    the members of the Age Discrimination Class under the Workforce Reduction Plan.  Mr. Fonseca

12    and the members of the Age Discrimination Class were also subjected to discrimination by

13    Defendants not re-hiring, re-instating, or hiring Mr. Fonseca and the members of the Age

14    Discrimination Class, especially in comparable positions.

15        118.    HP failed to take all reasonable steps to prevent Mr. Fonseca and the members of the

16    Age Discrimination Class's discriminatory selection and termination under HP's Workforce

17    Reduction Plan.  HP's failure to take reasonable steps to prevent Mr. Fonseca and the members of

18    the Age Discrimination Class's discriminatory termination under HP's Workforce Reduction Plan

19    was a substantial factor in causing harm to Mr. Fonseca and the members of the Age Discrimination

20    Class.

21        119.    As a substantial direct and proximate result of Defendants willfully, knowingly, and

22    intentionally discriminating against Mr. Fonseca and the members of the Age Discrimination Class,

23    Mr. Fonseca and the members of the Age Discrimination Class have suffered and will continue to

24    suffer pain and suffering and extreme and severe mental anguish and emotional distress.  Thus, Mr.

25    Fonseca and the members of the Age Discrimination Class are entitled to general and compensatory

26    damages in an amount to be proven at trial.

27        120.    As a substantial direct and proximate result of Defendants' willful, knowing, and

28    intentional discrimination against Mr. Fonseca and the members of the Age Discrimination Class,

Mr. Fonseca and the members of the Age Discrimination Class have incurred and will continue to

incur a loss of earnings and other employment benefits and job opportunities. Mr. Fonseca and the members of the Age Discrimination Class are therefore entitled to general and compensatory damages in amounts to be proven at trial.

121.    Mr. Fonseca is informed and believes, and based thereon alleges, that Defendants' outrageous conduct directed at Mr. Fonseca and the members of the Age Discrimination Class described above, was done with malice, fraud, or oppression and with conscious and/or reckless disregard for the rights of Mr. Fonseca and the members of the Age Discrimination Class, and with the intent, design, and purpose of injuring them. Defendants, through their officers, managing agents, and or their supervisors, authorized, condoned, and or ratified the unlawful of all of the other defendants. Thus, Mr. Fonseca and the members of the Age Discrimination Class are entitled to exemplary or punitive damages from Defendants in amounts to be determined according to proof at trial.

122.    As a further direct and proximate result of Defendants' actions, Mr. Fonseca and the members of the Age Discrimination Class are entitled to and seek their attorney fees and costs. (See Cal. Govt. Code § 12965(b).)

123.    Mr. Fonseca and the members of the Age Discrimination Class also seek the "affirmative relief" or "prospective relief" afforded them under California Government Code section 12926(a).

**FIFTH CAUSE OF ACTION**

**Violation of the Cartwright Act – California Business and Professions Code §§ 16720 *et seq.***

**(Plaintiff Bryant Fonseca, on Behalf of Himself and the Antitrust Class Against Defendants)**

124.    Mr. Fonseca, on behalf of himself and the Antitrust Class, re-allege and incorporate by reference, as though fully set forth herein, all of the preceding paragraphs.

125.    Except as expressly provided in California Business and Professions Code sections 16720 *et seq.*, every trust is unlawful, against public policy, and void. A trust is a combination of capital, skill, or acts by two or more persons for any of the following purposes:

a.    To create or carry out restrictions in trade or commerce.

b.    To limit or reduce the production, or increase the price of

merchandise or of any commodity.

    c.   To prevent competition in manufacturing, making, transportation, sale or purchase of merchandise, produce or any commodity.

    d.   To fix at any standard or figure, whereby its price to the public or consumer shall be in any manner controlled or established, any article or commodity of merchandise, produce or commerce intended for sale, barter, use or consumption in this State.

126.    HP, by and through its officers, directors, employees, agents or other representatives, has entered into an unlawful agreement, combination, and conspiracy in restraint of trade, in violation of California Business and Professions Code section 16720.

127.    HP conspired with 3D Systems and entered into an unlawful trust agreement in restraint of trade and commerce by, among other things, restricting and limiting, to a substantial degree, competition among these defendants' skilled labor, and fixing the wages and salary ranges for said class members, all with the purpose and effect of suppressing class members' compensation and restraining competition in the market for services of members of the Antitrust Class.

128.    As a direct and proximate result of HP's conduct members of the Antitrust Class were also injured by incurring suppressed compensation to levels lower than the members otherwise would have incurred in the absence of HP's unlawful trust, all in an amount to be proven at trial.

129.    HP, Plaintiff, and other members the Antitrust Class are "persons" within the meaning of the Cartwright Act as defined in California Business and Professions Code section 16702.

130.    HP's practices and associated agreements are *per se* violations of the Cartwright Act, and their conduct violates the Cartwright Act.

131.    As a result of the above violations, Plaintiff and the Antitrust Class have been damaged in an amount according to proof.

CLASS ACTION COMPLAINT FOR DAMAGES

## SIXTH CAUSE OF ACTION

### Violation of California Business and Professions Code §§ 16600 *et seq.*

### (Plaintiff Bryant Fonseca, on Behalf of Himself and the Antitrust Class Against Defendants)

132.    Mr. Fonseca, on behalf of himself and the Antitrust Class, re-allege and incorporate by reference, as though fully set forth herein, all of the preceding paragraphs.

133.    Under California Business and Professions Code section 16600, *et seq.*, except as expressly provided for by section 16600, et seq., every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void.

134.    HP entered into, implemented, enforced agreements, and engaged in practices that are unlawful and void under Section 16600.

135.    HP's practices, agreements, and conspiracy have included concerted action and undertakings among the Defendant and others with the purpose and effect of: (a) reducing open competition among Defendant and other companies for skilled labor; (b) reducing employee mobility; (c) reducing or eliminating opportunities for employees to pursue lawful employment of their choice; and (d) limiting employee professional betterment.

136.    HP's practices, agreements, and conspiracy are contrary to California's settled legislative policy in favor of open competition and employee mobility, and are therefore void and unlawful.

137.    HP's practices, agreements, and conspiracy were not intended to protect and were not limited to protecting any legitimate proprietary interest of Defendant.

138.    HP's practices, agreements, and conspiracy do not fall within any statutory exception to Section 16600, *et seq.*

139.    The acts done by HP and each of the parties to the anti-competitive practices and agreements as part of, and in furtherance of, their contracts, combinations or conspiracies were authorized, ordered, or done by their respective officers, directors, agents, employees, or representatives while actively engaged in the management of each defendant's affairs

140.    Accordingly, Plaintiff and members of Antitrust Class seek a judicial declaration that Defendant's agreements and conspiracy are void as a matter of law under Section 16600, and a

permanent injunction enjoining HP from ever again entering into similar agreements in violation of Section 16600.

141.    Although Plaintiff is unaware of the exact date that this conspiracy began, Plaintiff alleges upon information and belief that this cause of action accrued within the last four years.

**SEVENTH CAUSE OF ACTION**

**Unfair Competition – California Business and Professions Code §§ 17200, *et seq*.**

**(Plaintiff Bryant Fonseca on Behalf of Himself and the Age Discrimination Class and Antitrust Class Against Defendants)**

142.    Mr. Fonseca, on behalf of himself and the Age Discrimination Class and Antitrust Class, re-allege and incorporate by reference, as though fully set forth herein, all of the preceding paragraphs.

143.    The Unfair Competition Law ("UCL"), which is codified under California Business and Professions Code section 17200, *et seq*. prohibits acts of "unfair competition," including any unlawful, unfair, fraudulent *or* deceptive business act *or* practice as well as "unfair, deceptive, untrue or misleading advertising."

144.    A plaintiff may bring a Business & Professions Code section 17204 claim even when the underlying statutory violation does not provide the plaintiff with a private right of action. (*See Safeway v. Superior Court* (2015) 238 Cal. App. 1138, 1147 ["[t]he statutory language referring to 'any unlawful, unfair *or* fraudulent' practice makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law"].)

145.    Defendants have engaged, and continue to engage, in unfair, deceptive, fraudulent, and unlawful business practices in California by practicing, employing, and utilizing the employment policies and practices outlined above, including, i.e., the various acts of discrimination and anti-competitive practices detailed herein.

146.    Defendants engaged in unlawful or unfair competition by, among other things, engaging in conduct as alleged herein:

　　　　　　　　a.    wherein the utility of such conduct, if any, is outweighed by the

gravity of the consequences to Plaintiff and the members of the
Plaintiff Classes;

    b.  that is immoral, unethical, oppressive, unscrupulous, or substantially
injurious to Plaintiff and the other members of the Plaintiff Classes;

    c.  that undermines or violates the stated policies underlying California
law which seek to protect employees aged 40 or over against age
discrimination, and thus provide a sufficient predicate for claims for
unfair competition;

    d.  Violating the Cartwright Act; and

    e.  Violation of the California Business and Professions Code sections §§
16600 *et seq.*

147.     Defendants knew or should have known of their anti-competitive and discriminatory conduct as alleged herein.

148.     Defendants committed fraudulent business practices by engaging in conduct, as alleged herein, that was and is likely to deceive employees acting reasonably under the circumstances.  Defendants' fraudulent business practices include, but are not limited to, failing to disclose, concealing from, and/or failing to investigate whether Plaintiff and the members of the Age Discrimination Class were being selected for termination, terminated, and not re-hired due to their age, misrepresenting the reasons for those actions, including through reference to pretextual explanations related to job performance or qualifications, and/or failing to prevent, respond to, adequately investigate, and/or appropriately resolve instances of age discrimination in the workplace, including the adverse impact of Defendants' employment practices on employees aged 40 or over.

149.     Defendants also acted unlawfully and unfairly by engaging in anti-competitive practices to suppress wages of their respective workforce by restricting the ability of its employees from obtaining employment with other technology companies, to wit 3D Systems.

150.     Defendants' use of such unfair, deceptive, fraudulent, and unlawful business practices constitutes unfair, deceptive, fraudulent, and unlawful competition, provides an unfair advantage over Defendants' competitors, and an unfair benefit to Defendants at the expense of

Plaintiff, the members of the Age Discrimination Class and Antitrust Class, and the general public.

151.    During the class period, Defendants have engaged in unlawful, deceptive, fraudulent, and unfair business practices, proscribed by Business & Professions Code sections 17200, *et seq.*, including those described herein, thereby obtaining valuable property, money, and services from Plaintiff, members of the Age Discrimination Class and Antitrust Class, and all persons similarly situated, and have deprived Plaintiff, members of the Age Discrimination Class and Antitrust Class, and all persons similarly situated, of valuable rights and benefits guaranteed by law, all to their detriment.

152.    By virtue of the direct injuries that Plaintiff and the members of the Plaintiff Classes have sustained from Defendants' wrongful conduct, Plaintiff and the members of the Plaintiff Classes have standing to sue in order to obtain the remedies that are available to them under the UCL.

153.    The UCL authorizes restitutionary and injunctive relief to prevent unlawful, deceptive, unfair, or fraudulent business acts for practices, and both restitution and disgorgement of money or property wrongfully obtained by means of such unfair competition. (Cal. Bus. & Prof. Code § 17203.)

154.    Plaintiff seeks, on his own behalf, and on behalf of the other members of the Plaintiff Classes and on behalf of the general public, equitable and injunctive relief, along with full restitution and disgorgement of monies, including interest, according to proof, to restore any and all monies withheld, acquired and/or converted by Defendants by means of the deceptive, unfair, fraudulent, and unlawful practices complained of herein.

155.    The illegal, deceptive, fraudulent, and unfair conduct alleged herein is continuing, and there is no indication that Defendants will cease and desist from such activity in the future. Plaintiff alleges that if Defendants are not enjoined from the conduct set forth in this Complaint, Defendants' illegal, deceptive, fraudulent, and unfair conduct will continue, i.e. they will continue to engage in practices that disparately impact and discriminate against employees on account of age. (*See Herr v. Nestle U.S.A., Inc.* (2003) 109 Cal. App. 4th 779, 789 — "injunctive relief under the UCL is an appropriate remedy where a business has engaged in an unlawful practice of discriminating against older workers.")

156.     Plaintiff, the members of the Age Discrimination Class, and all persons in interest, are entitled to, and do seek restitution and such relief as may be necessary to disgorge the profits which HP acquired, or of which Plaintiff and the members of the Age Discrimination Class have been deprived, by means of the above-described unfair, unlawful, deceptive, and or fraudulent business practices.

157.     Plaintiff and the members of the Age Discrimination Class and Antitrust Class have no plain, speedy, and or adequate remedy at law to redress the injuries which they have suffered as a consequence of HP's unfair, unlawful, deceptive, and/or fraudulent business practices.  As a result of the unfair, unlawful, deceptive, and/or fraudulent business practices described above, Plaintiff and the members of the Age Discrimination Class and Antitrust Classes have suffered and will continue to suffer irreparable harm unless HP, and each of the defendants, are restrained from continuing to engage in said unfair, unlawful, and/or fraudulent business practices.

158.     Plaintiff and the members of the Age Discrimination Class and Antitrust Class also request an order that HP identify, locate, and make restitution to affected members of the general public, and specifically those terminated under the Workforce Reduction Plan, all funds and the value of all things or property acquired by the acts of unfair competition and deceptive practices set forth above, and all additional orders necessary to accomplish this purpose, under California Business & Professions Code section 17203.

159.     For the four (4) years preceding the filing of this action, as a result of HP's unfair, deceptive, fraudulent, and unlawful business practices alleged herein, Plaintiff and the members of the Age Discrimination Class and Antitrust Class request restitution, damages to compensate them fully, and disgorgement of all monies and profits from HP in an amount according to proof at time of trial.

160.     Plaintiff is entitled to an award of attorneys' fees and costs in prosecuting this action against Defendants under California Code of Civil Procedure section 1021.5 and other applicable law.  A successful outcome in this action will confer on the general public and a large class of persons (the Age Discrimination and Antitrust Classes) both a pecuniary and nonpecuniary benefit and will result in the enforcement of important rights affecting the public interest.  The necessity and financial burden of private enforcement furthermore make such an award appropriate.

**PRAYER FOR RELIEF**

Plaintiff, on behalf of himself individually and on behalf of Plaintiff Classes prays for relief and judgment against Defendant and any later named defendant, jointly and severally as follows:

1. Certification of the case as a class action and appointment of Plaintiff as Class Representative of each class and his counsel of record as Class Counsel;

2. All damages to which Plaintiffs and each member of the Age Discrimination Class and Antitrust Class are entitled due to Defendants' conduct, including, but not limited to, back pay, front pay, general and special damages for lost compensation and job benefits that they would have received but for the discrimination anti-competitive practices of Defendants;

3. To preliminarily and permanently enjoin Defendants from implementation of the Workforce Reduction Plan that disparately impacts and discriminates against employees on account of their age;

4. For an order requiring Defendants to restore to the general public all funds acquired by means of any act or practice declared by this Court to be unlawful or fraudulent or to constitute unfair competition under California Business and Professions Code section 17200, *et seq.*;

5. For restitution, including, without limitation, restitutionary disgorgement;

6. For affirmative or prospective relief;

7. For exemplary and punitive damages;

8. For attorneys' fees, expenses, and costs of suit;

9. For pre-judgment and post-judgement interest;

10. An order enjoining Defendants from continuing the unfair, deceptive, fraudulent, and unlawful business practices alleged herein; and

11. For all such other and further relief the Court may deem just and proper.

DATED: November 29, 2017                    **HOGUE & BELONG**


                                            __s/ *Jeffrey Hogue*_____
                                            Jeffrey L. Hogue
                                            Tyler J. Belong
                                            Erik A. Dos Santos
                                            Attorneys for Plaintiff Bryant Fonseca on
                                            behalf of himself and all others similarly
                                            situated

CLASS ACTION COMPLAINT FOR DAMAGES

1

## **DEMAND FOR JURY TRIAL**

2        Plaintiffs Bryant Fonseca hereby demands a jury trial.

3

4    DATED: November 29, 2017                **HOGUE & BELONG**

5

6                                            _s/ Jeffrey Hogue_____

7                                            Jeffrey L. Hogue
                                             Tyler J. Belong
                                             Erik A. Dos Santos

8                                            Attorneys for Plaintiff Bryant Fonseca on
                                             behalf of himself and all others similarly

9                                            situated

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT FOR DAMAGES